IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JOHN T. VENALECK, et al., | ) | CASE NO.:   1:09 CV 2741 |
| | ) | |
| Plaintiffs, | ) | JUDGE DONALD C. NUGENT |
| | ) | |
| v. | ) | |
| | ) | |
| MAN DIESEL NORTH AMERICA | ) | MEMORANDUM OPINION |
| INC, et al., | ) | AND ORDER |
| | ) | |
| Defendants. | ) | |
| | ) | |

This matter comes before the Court upon a Motion to Dismiss Plaintiffs' Complaint for Lack of Personal Jurisdiction filed by Defendant Scott Marine Power, Inc. (ECF # 5).  Also before the Court is a  Motion to Dismiss the Complaint or, in the Alternative, to Change Venue filed by Cable Marine, Inc. (ECF # 6).   For the reasons set forth below, the Motions to Dismiss are GRANTED.

**I. BACKGROUND**

On November 2, 2009, Plaintiffs John T. Venaleck and Joan B. Venaleck filed a three-count Complaint against Defendants MAN Diesel North America, Inc. ("MAN Diesel"), Cable Marine, Inc. ("Cable Marine"), and Scott Marine Power, Inc. ("Scott Marine") in the Court of Common Pleas for Lake County, Ohio.  (ECF # 1, Ex. 1.)  The causes of action set forth in the Complaint involve Plaintiffs' 56-foot Sunseeker Predator 2000 vessel, named the Halcyon.  (*Id.*) In the Complaint, Plaintiffs allege that they:

> purchased the Halcyon, a 56-foot Sunseeker Predator 2000 vessel registered in Ohio, approximately ten years ago from a Sunseeker dealer now located in Catawba, Ohio. The Halcyon was then delivered to [them] in Cleveland, Ohio.  At the time of purchase, the Halcyon was equipped with two turbocharged 800 horsepower MAN Diesel engines, serial numbers 4239056174A301 and 4239056175A301, which were sold to Sunseeker boat manufacturer for ultimate sale in Ohio and other places

throughout the world.

(*Id.* at ¶ 4.)  On February 22, 2009 the Halcyon sank off the coast of Elliot Key, Florida.  (*Id.* at ¶¶ 8-11.)  It is this incident that forms the basis of the causes of action in Plaintiffs' Complaint. (*Id.*)

Plaintiffs claim that, in the fall of 2008, the Halcyon was delivered to Cable Marine in Fort Lauderdale, Florida, where Cable Marine was to perform repair and upgrade work to the "engines and hull-related items, including fuel filter replacement and extensive engine work." (*Id.* at ¶ 5.)  Plaintiffs state that the work was completed between November 2008 and February 21, 2009, pursuant to an oral contract that they entered into in Ohio.  (*Id.* at ¶ 6.)  Plaintiffs claim that, on or about February 21, the Halcyon was delivered to them in Ft. Lauderdale, Florida, and it was represented to them that the vessel was repaired, sea tried, and sea worthy.  (*Id.* at ¶ 7.)

Plaintiffs describe the events of February 22, 2009 at follows:

[A]t approximately 8:00 a.m., Plaintiffs departed from The New River, Pier 66 aboard the Halcyon, and embarked for the ultimate destination of Ft. Myers, Florida. Approximately one hour into the voyage, without warning, the Halycon's engines suddenly bogged and smoke began billowing out from the engine room.  Internal fire suppression systems had failed or were ineffective.  Attempts to access the engines were thwarted as the engine room was totally engulfed in flames and flames were emitting from hatches and vents.  The Plaintiffs gathered their coordinates, radioed 'mayday,' dialed 911, and abandoned the ship into the Atlantic Ocean, several miles off shore.  The Halcyon eventually sank off the coast of Elliot Key as a direct and proximate result of the fire, and Plaintiffs were rescued by the U.S. Coast Guard and others.

(*Id.* at ¶¶ 8-11.)  Plaintiffs state that the Halcyon's remains were salvaged from the ocean bottom and preserved for inspection.  (*Id.* at ¶ 12.)

According to Plaintiffs, the cause and origin of the fire was a cracked fuel filter housing, "which allowed pressurized diesel fuel to be sprayed into the engine room and onto the engine

exhaust, with the heat of the engine causing the fuel to ignite." (*Id*. at ¶ 13.) Plaintiffs state that the fuel filter was acquired from MAN Diesel and delivered and installed by Defendants just prior to the loss. (*Id.* at ¶ 14.) Plaintiffs further allege that all times prior to their boarding the Halycon, the vessel and the instrumentalities that allegedly caused the fire were in Defendants' exclusive care. (*Id.* at ¶ 15.) Based on the foregoing, Plaintiffs attempt to set forth claims for breach of contract (Count I), negligence (Count II), and negligent design, manufacture, and failure to warn (Count III).

On November 23, 2009, Cable Marine, with the consent of MAN Diesel and Scott Marine, filed a Notice of Removal in this Court, removing this case pursuant to this Court's diversity jurisdiction. (ECF # 1.) On November 20, 2009, Scott Marine filed a Motion to Dismiss Plaintiffs' Complaint for Lack of Personal Jurisdiction. (ECF # 5.) On December 2, 2009, Cable Marine filed a Motion to Dismiss, or in the Alternative, Motion to Change Venue. (ECF # 6.) On January 4, 2010, Plaintiffs' filed a Combined Memorandum in Opposition to Defendant Scott Marine Power and Defendant Cable Marine Inc.'s Motion to Dismiss. (ECF # 11.) Scott Marine and Cable Marine filed Reply Briefs in Support of their Motions on January 12 and January 19, 2010 respectively. (ECF # 13, ECF # 14.) Thus, the Motions have been briefed fully and are now ripe for disposition.

## II. DISCUSSION

In a case that is brought under diversity jurisdiction, the federal court must apply the law of the forum state in examining whether personal jurisdiction exists. *See Mid-West Materials, Inc. v. Tougher Indus., Inc.*, 484 F. Supp. 2d 726, 729 (*citing Youn v. Track, Inc.*, 324 F.3d 409, 417 (6th Cir. 2003)). If a court does not hold an evidentiary hearing regarding whether a

defendant is subject to personal jurisdiction in Ohio, the pleadings and affidavits must be considered in a light most favorable to the plaintiff. *See Estate of Thomson v. Toyota Motor Corp. Worldwide*, 545 F.3d 357, 360-61 (6th Cir. 2008). More specifically, in considering a motion to dismiss for lack of personal jurisdiction without an evidentiary hearing, the court must consider the facts as set forth by the plaintiff as true. *See id.* Moreover, the plaintiff bears the burden of demonstrating that personal jurisdiction exists. *See Mid-West Materials*, 484 F. Supp. 2d at 729 (*citing Youn*, 324 F.3d at 417 ).

In order to overcome a defendant's assertion of lack of personal jurisdiction, the plaintiff need only set forth a prima facie showing of jurisdiction. *See CompuServe, Inc. v. Patterson*, 89 F.3d 1257 (6th Cir. 1996). In deciding whether personal jurisdiction exists, a court must engage in a two-part inquiry: the court must first determine whether the defendant is encompassed by the state's long-arm statute; and the court must next determine whether exercising personal jurisdiction over the defendant satisfies standards of constitutional due process. *See Mid-West Materials*, 484 F. Supp. 2d at 729-30 (*citing Youn*, 324 F.3d at 417).

The first inquiry is whether Defendants Cable Marine and Scott Marine fall within Ohio's long-arm statute. Plaintiff argues that Defendants Cable Marine and Scott Marine are subject to specific personal jurisdiction in Ohio.  The Sixth Circuit has established a three-part test that governs whether a defendant is subject to specific personal jurisdiction in Ohio.  That three-part test is: (1) whether the defendant purposefully availed itself of the privilege of acting in Ohio; (2) whether the cause of action arises out of the defendant's activities in Ohio; and (3) whether the exercise of jurisdiction over the defendant is reasonable. *See id.* at 730.

This Court now examines whether Defendants Cable Marine and Scott Marine

4

purposefully availed themselves of the privilege of acting in Ohio.  "The purposeful availment requirement is satisfied when the defendant's contacts with the forum state proximately result from actions by the defendant [itself] that create a substantial connection with the forum State, and when the defendant's conduct and connection with the forum state are such that [it] should reasonably anticipate being haled into court there." *Iron Workers Union Local No. 17 Ins. Fund v. Philip Morris, Inc.*, 23 F. Supp. 796, 807 (N.D. Ohio 1998) (citing *CompuServe*, 89 F.3d at 1263) (internal quotations omitted)).  Thus, the purposeful availment element ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts.  *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985).  Furthermore, an individual's contract with an out-of-state party alone does not automatically establish minimum contacts.  *See Calphalon Corp. v. Rowlette*, 228 F.3d 718, 722 (6th Cir. 2000).

In this case, Plaintiffs argue that Defendants Cable Marine and Scott Marine carried on business and had dealings with them, such that they "transacted business" so as to fall within the ambit of Ohio's long-arm statute.  (ECF # 11 at 9.)  According to Plaintiffs, Defendants Cable Marine and Scott Marine entered into contracts with Plaintiffs in Ohio, maintained communications with Plaintiffs in Ohio during the service period via e-mail and telephone, forwarded invoices via mail or facsimile to Plaintiffs in Ohio, and accepted payment sent from Ohio for their performance of contract work.  (*Id.* at 9-10.)

Even accepting these allegations as true, the record reflects that Plaintiffs reached out to Defendants Cable Marine and Scott Marine to perform work on the Halcyon in Florida and that all of the work performed on the Halcyon took place in Florida.  The record likewise reflects that

Defendants Cable Marine and Scott Marine did not reach out and create continuing relationships and obligations in Ohio.  Rather, they accepted Plaintiffs' request to perform service in Florida, on a boat that was docked in Florida.  The fact that Defendants Cable Marine and Scott Marine entered into a contract with Plaintiffs alone is insufficient to demonstrate that they transacted business in Ohio for purposes of the statute.  Having reviewed Plaintiffs' allegations as set forth in the Complaint and the Combined Memorandum in Opposition to the Motions to Dismiss, the Court finds that the limited communications that these Defendants had with Plaintiffs via e-mail, telephone, mail or facsimile do not rise to the level of transacting business in Ohio, even considering the additional fact that payment originated in Ohio.  The Court finds that these contacts are too attenuated so as to constitute purposeful availment.  Accordingly, the Motions to Dismiss filed by Defendants Cable Marine and Scott Marine are GRANTED, and those Defendants are hereby DISMISSED from this action.

### III. CONCLUSION

For the reasons set forth above, the Motion to Dismiss Plaintiffs' Complaint for Lack of Personal Jurisdiction filed by Defendant Scott Marine (ECF # 5) and the Motion to Dismiss the Complaint filed by Cable Marine (ECF # 6) are GRANTED.  Defendants Cable Marine and Scott Marine are hereby DISMISSED from this action.

IT IS SO ORDERED.

*Donald C. Nugent*
DONALD C. NUGENT
United States District Judge

DATE   February 18, 2010