IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JOHN T. VENALECK, et al., | ) | CASE NO.: 1:09 CV 2741 |
| | ) | |
| Plaintiffs, | ) | JUDGE DONALD C. NUGENT |
| | ) | |
| v. | ) | |
| | ) | |
| MAN DIESEL NORTH AMERICA INC, et al., | ) | MEMORANDUM OPINION AND ORDER |
| | ) | |
| Defendants. | ) | |
| | ) | |

This matter comes before the Court upon a Motion to Reconsider Dismissal filed by Plaintiffs John T. Venaleck and Joan B. Venaleck. (ECF # 25.) For the reasons set forth below, Plaintiffs' Motion is DENIED.

## I. BACKGROUND

On November 2, 2009, Plaintiffs John T. Venaleck and Joan B. Venaleck filed a three-count Complaint against Defendants MAN Diesel North America, Inc. ("MAN Diesel"), Cable Marine, Inc. ("Cable Marine"), and Scott Marine Power, Inc. ("Scott Marine") in the Court of Common Pleas for Lake County, Ohio. (ECF # 1, Ex. 1.) The causes of action set forth in the Complaint involve Plaintiffs' 56-foot Sunseeker Predator 2000 vessel, named the Halcyon. (*Id.*) In the Complaint, Plaintiffs allege that they:

> purchased the Halcyon, a 56-foot Sunseeker Predator 2000 vessel registered in Ohio, approximately ten years ago from a Sunseeker dealer now located in Catawba, Ohio. The Halcyon was then delivered to [them] in Cleveland, Ohio. At the time of purchase, the Halcyon was equipped with two turbocharged 800 horsepower MAN Diesel engines, serial numbers 4239056174A301 and 4239056175A301, which were sold to Sunseeker boat manufacturer for ultimate sale in Ohio and other places throughout the world.

(*Id.* at ¶ 4.) On February 22, 2009 the Halcyon sank off the coast of Elliot Key, Florida. (*Id.* at

¶¶ 8-11.) It is this incident that forms the basis of the causes of action in Plaintiffs' Complaint. (*Id.*)

Plaintiffs claim that, in the fall of 2008, the Halcyon was delivered to Cable Marine in Fort Lauderdale, Florida, where Cable Marine was to perform repair and upgrade work to the "engines and hull-related items, including fuel filter replacement and extensive engine work." (*Id.* at ¶ 5.) Plaintiffs state that the work was completed between November 2008 and February 21, 2009, pursuant to an oral contract that they entered into in Ohio. (*Id.* at ¶ 6.) Plaintiffs claim that, on or about February 21, the Halcyon was delivered to them in Ft. Lauderdale, Florida, and it was represented to them that the vessel was repaired, sea tried, and sea worthy. (*Id.* at ¶ 7.)

Plaintiffs describe the events of February 22, 2009 at follows:

> [A]t approximately 8:00 a.m., Plaintiffs departed from The New River, Pier 66 aboard the Halcyon, and embarked for the ultimate destination of Ft. Myers, Florida. Approximately one hour into the voyage, without warning, the Halycon's engines suddenly bogged and smoke began billowing out from the engine room. Internal fire suppression systems had failed or were ineffective. Attempts to access the engines were thwarted as the engine room was totally engulfed in flames and flames were emitting from hatches and vents. The Plaintiffs gathered their coordinates, radioed 'mayday,' dialed 911, and abandoned the ship into the Atlantic Ocean, several miles off shore. The Halcyon eventually sank off the coast of Elliot Key as a direct and proximate result of the fire, and Plaintiffs were rescued by the U.S. Coast Guard and others.

(*Id.* at ¶¶ 8-11.) Plaintiffs state that the Halcyon's remains were salvaged from the ocean bottom and preserved for inspection. (*Id.* at ¶ 12.)

According to Plaintiffs, the cause and origin of the fire was a cracked fuel filter housing, "which allowed pressurized diesel fuel to be sprayed into the engine room and onto the engine exhaust, with the heat of the engine causing the fuel to ignite." (*Id.* at ¶ 13.) Plaintiffs state that the fuel filter was acquired from MAN Diesel and delivered and installed by Defendants just

2

prior to the loss. (*Id.* at ¶ 14.) Plaintiffs further allege that all times prior to their boarding the Halycon, the vessel and the instrumentalities that allegedly caused the fire were in Defendants' exclusive care. (*Id.* at ¶ 15.) Based on the foregoing, Plaintiffs attempt to set forth claims for breach of contract (Count I), negligence (Count II), and negligent design, manufacture, and failure to warn (Count III).

On November 23, 2009, Cable Marine, with the consent of MAN Diesel and Scott Marine, filed a Notice of Removal in this Court, removing this case pursuant to this Court's diversity jurisdiction. (ECF # 1.) On November 20, 2009, Scott Marine filed a Motion to Dismiss Plaintiffs' Complaint for Lack of Personal Jurisdiction. (ECF # 5.) On December 2, 2009, Cable Marine filed a Motion to Dismiss, or in the Alternative, Motion to Change Venue. (ECF # 6.) On February 16, 2010, this Court issued an Opinion and Order granting Scott Marine's Motion to Dismiss Plaintiffs' Complaint and Cable Marine's Motion to Dismiss the Complaint, thereby dismissing Defendants Cable Marine and Scott Marine from this action. (ECF # 23.) On March 2, 2010, Plaintiffs filed the instant Motion for Reconsideration, asking this Court to reconsider the February 16 Opinion and Order. (ECF # 26.) Plaintiffs' Motion is currently before the Court for consideration.

## II. DISCUSSION

As a general proposition, a Motion for Reconsideration is only appropriate: "(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or to prevent a manifest injustice." *Sherwood v. Royal Ins. Co. of Am.*, 290 F. Supp.2d 856, 858 (N.D. Ohio 2003). Hence, a motion for reconsideration is not a mechanism that unhappy litigants may use to re-litigate issues

3

previously decided by the court. *See id.* As such, a motion for reconsideration is not a substitute for an appeal. *See id.*

Here, Plaintiffs claim that reconsideration is appropriate because, "contrary to the conclusion reached in this Court's Judgment and Memorandum Opinion and Order, Defendants Cable Marine and Scott Marine . . . maintained sufficient minimum contacts with Ohio such that the Defendants have purposefully availed themselves of the privilege of acting in Ohio, thereby allowing this Court to properly exercise of [sic] jurisdiction over the Defendants in the case *sub-judice*." (ECF # 25 at 4.) In support of their position, Plaintiffs point to their Notice of Filing Supplemental Exhibits to their Combined Memorandum in Opposition to the Motions to Dismiss, filed with the Court on February 18, 2010. (ECF # 21.)

In the Notice of Filing Supplemental Exhibits, Plaintiffs provide this Court with four exhibits. (*Id.*) The first is a January 12, 2009 e-mail from Cable Marine to Plaintiffs, wherein Cable Marine recommends "cleaning and touching up running gear and maybe re-coating the water line areas before launching." (*Id.*, Ex. A.) The second is a December 2, 2008 letter from Cable Marine to Plaintiffs, in which Cable Marine recommends replacement of certain items. (*Id.*, Ex. B.) Both of these communications relate directly to Cable Marine's work on the Halcyon. (*See id.*) The third is a mass e-mail sent by Scott Marine on February 8, 2010, long after the filing of the Complaint in this case. (*Id.*, Ex. C.) Finally, the fourth is a mass e-mail sent by Scott Marine on March 18, 2009, which Scott Marine argues, "with due diligence, could have been discovered by Plaintiffs when the issue of personal jurisdiction was first briefed." (*Id.*, Ex. D; ECF # 26 at 2.)

As this Court found in its previous Opinion and Order, the record reflects that Plaintiffs

reached out to Defendants Cable Marine and Scott Marine to perform work on the Halcyon in Florida and that all of the work performed on the Halcyon took place in Florida. These e-mails alone are insufficient to give rise to jurisdiction. *See R.D. Marks Consulting, Inc. v. Astra Holdings, LP*, No. 5:08 CV 2962, 2009 WL 1362972, at *11, n. 7 (N.D. Ohio May 14, 2009) (citing *LAK Inc. v. Deer Creek*, 885 F.2d 1293, 1301 (6th Cir. 1989)). That is, correspondence relating to the transaction initiated by Plaintiffs that took place in Florida on a boat docked in Florida, a mass e-mail sent long after the filing of the instant case, and an additional mass e-mail are insufficient to demonstrate that Defendants Cable Marine and Scott Marine transacted business in Ohio for purposes of the statute.

The only remaining exhibit referred to by Plaintiffs is attached to the Motion for Reconsideration, and it consists of a page from Cable Marine's website. (ECF # 25, Ex. 1.) The page is entitled "International Service," and it provides that Cable Marine has conducted business in, among other places, Ohio. (*See id.*) The Court has no additional information about the page, including when it was posted and, more significantly, whether it did, in fact, result in Plaintiffs conducting business in Ohio. Unlike the *American Network* case cited by Plaintiffs, there is no evidence that Cable Marine gained customers in Ohio due to the services it advertised on its website. (*Id.* at 6.) Under the applicable case law, whether Cable Marine held itself out as welcoming business from Ohio is immaterial, because Plaintiffs make no allegation that the website generated any business between Cable Marine and Ohio. *See Tewart Enter., Inc. v. Dawson*, No. 1:05 CV 30, 2007 WL 1114819, at *6 (S.D. Ohio 2007) (citing *Bird v. Parsons*, 289 F.3d 865 (6th Cir. 2002)).

Based upon the foregoing, no argument or evidence set forth by Plaintiffs in the Motion

5

to Reconsider convinces this Court that its previous ruling was in error. Accordingly, the Motion for Reconsideration is DENIED. In accordance with this Court's prior Order, Defendants Cable Marine and Scott Marine have been and remain dismissed from this action.

### III. CONCLUSION

Plaintiffs' Motion for Reconsideration is DENIED. In accordance with this Court's prior Order, Defendants Cable Marine and Scott Marine have been and remain dismissed from this action.

IT IS SO ORDERED.

*[signature]*
DONALD C. NUGENT
United States District Judge

DATE March 16, 2010